UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ADRIAN HINTON,**<br><br>　　　　　**Defendant.** | Case No. 25-CR-026 (APM) |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. This memorandum, together with such evidence as may be presented at the sentencing hearing and the government's allocution at the time of sentencing, is intended to outline to the Court relevant matters relating to what the government believes would be an appropriate sentence in this case. Because of this conviction, the government has reviewed the application of the advisory Sentencing Guidelines, the final Presentence Report ("PSR") and sentencing recommendation prepared by U.S. Probation Officer ("USPO") Ms. Kenika Dixon, *see* PSR ECF #24 and #25, the relevant factors set forth in 18 U.S.C. § 3553(a), and the defendant's plea for any impact on the appropriate sentence for the defendant in this matter. Based on that thorough and comprehensive review, the government respectfully avers that this Court should sentence the defendant to a term of one-year of Supervised Release.

**I.   INTRODUCTION**

　　On January 31, 2025, the defendant pled guilty to one-count Indictment charging Adrian

J. Hinton with Destruction of Government Property, in violation of 18 USC § 1361. The plea agreement summarizes the penalties as follows: a maximum sentence of one year imprisonment; a fine up to $100,000, and a term of supervised release of not more than one year. The defendant agreed to pay a special assessment of $25.00 per this conviction.

## II.   FACTUAL BACKGROUND

The block of First Street Northwest between Pennsylvania Avenue and Maryland Avenue adjacent to the Ulysses S. Grant Memorial is on the U.S. Capitol Grounds. U.S. Capitol Grounds, including streets and sidewalks, are the property of the United States. On January 8, 2025, President Carter was laying in state at the Capitol Rotunda and numerous elected officials were visiting the Capitol Rotunda.

On January 8, 2025, Adrian J. Hinton drove his vehicle from Virginia, through Washington, D.C., arriving on U.S. Capitol Grounds shortly before 5 p.m. He eventually parked on the block of First Northwest between Pennsylvania Avenue and Maryland Avenue. Around 5 p.m. on January 8, 2025, Adrian J. Hinton removed a bottle containing an unknown liquid from his vehicle. He then spread the liquid on the top of the vehicle. Mr. Hinton then utilized matches, placing them near the liquid on the vehicle, and ignited the vehicle on fire. The vehicle caught on fire. Bystanders quickly reported the incident to the U.S. Capitol Police ("USCP") who responded within minutes of Mr. Hinton lighting his vehicle on fire.

In response to the event, and the proximity of elected officials in the United States Government, a variety of law enforcement agencies responded, including the U.S. Secret Service, the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, and Firearms, and a

multitude of D.C. law enforcement agencies. A large cordon was established in the event the vehicle contained any improvised explosives devices. Bomb technicians were called to the scene and rendered the scene safe. Law enforcement and technicians conducted a search and found no explosives or accelerants in the vehicle but found matches and a water bottle with a mixture with a knife sticking out on the ground in the snow adjacent to the vehicle.

After waiving his Miranda rights and agreeing to speak with law enforcement, Mr. Hinton told agents that throughout the prior month he had developed a plan to light his vehicle on fire near the U.S. Capitol to draw attention to his displeasure with the recent election results. Mr. Hinton indicated that that he had done online research to learn how to make a homemade "Napalm" by mixing Crisco and gasoline together in a water bottle, which he spread on his vehicle before lighting the fire. *See* Statement of Offense ECF #17.

### III.   SENTENCING CALCULATION

#### A.   Base Offense Level

U.S. Probation calculated the following: Base Offense Level: The guideline for 18 USC § 1361 offenses is found in USSG §2B1.1 of the guidelines. That section provides that an offense involving destruction of government property has a base offense level of six. USSG §2B1.1(a)(2). Adjusted Offense Level (Subtotal): 6. Acceptance of Responsibility: The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). -2. Chapter Four Adjustment: The defendant meets the criteria at USSG §§4C1.1(a)(1)-(10). Therefore, the defendant is a Zero-Point Offender, and the offense level is reduced by two levels. USSG §§4C1.1(a) and (b). -2. Therefore, Total Offense Level: 2. *See* PSR ECF #24 ¶¶ 23-32.

## UNITED STATES' ANALYSIS OF THE SENTENCING GUIDELINES

Even though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated.") Moreover, the Guidelines' recommended sentencing range will ordinarily "'reflect a rough approximation of sentences that might achieve [18 U.S.C.] § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) (*quoting Rita v. United States*, 551 U.S. 338, 347-50 (2007)); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, comment., backg'd.

*Dorcely*, 454 F.3d at 375. Accordingly, based on the facts of this matter and, *inter alia*, the lack of a criminal history of the defendant all demonstrates that this Court should sentence the defendant to a one-year term of Supervised Release.

Notably, as outlined in the Final PSR noted: Judiciary Sentencing Information (JSIN): During the last five fiscal years (FY2019- 2023), there were 10 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 2 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 4 defendants (40%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 4 month(s) and the median length of imprisonment imposed was 4 month(s). For all 10 defendants in the cell, the average sentence imposed was 1 month(s) and the median sentence imposed was 0 month(s). *See* PSR ECF #24 ¶98.

## VI.   CONCLUSION

For the foregoing reasons, the United States recommends a sentence of a term of one-year supervised release. The government respectfully avers that its recommended sentence to the Court would therefore reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

          Respectfully submitted,
          JEANINE FERRIS PIRRO
          UNITED STATES ATTORNEY

By:    */s/Emory V. Cole*
        EMORY V. COLE
        PA. Bar No. 49136
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        Telephone: (202) 252-7692
        Emory.Cole@usdoj.gov