## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 25-cr-26 (APM)** |
| | ) | |
| **ADRIAN HINTON** | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF SENTENCING

Mr. Adrian Hinton will appear before this Honorable Court for sentencing on May 23, 2025. He pleaded guilty to his only charge—Misdemeanor Destruction of Property (Attempt)—for lighting a fire atop his car to "make the public aware of what I thought was a threat to national security and that was Donald Trump and the administration he was bringing in." As he informed the Court, he spraypainted his twitter handle on his car and lit the fire in hopes that individuals would see the fire, see the account and then read the information posted on his Twitter account. He did so in a manner that would attract attention but would be safe and pose no harm. As a result, he was appropriately offered a misdemeanor plea which he promptly accepted. Based on the sentencing factors that the Court is required to follow under 18 U.S.C. §3553, the defense respectfully requests that the Court sentence Mr. Hinton to a period of probation because that sentence is sufficient but no greater than necessary to punish him.

### Introduction

Mr. Hinton is a 36 year old man who grew up in the Lorton, VA area. He lived a relatively normal life, playing soccer and lacrosse and having a middling academic record at a high school best known for being the "bad guys" in Remember the Titans. He graduated and went to community college where he studied filmmaking, Chinese and criminal justice. His sprawling interests never became focused and he didn't finish school. He continued to live at home and worked various non-career jobs like driving Lyft and working at an Amazon warehouse. He last worked in 2021, shortly after his mother passed from cancer.

Like many Americans, he became focused during the election cycle and like half of all Americans, was troubled at the election of President Trump and his relationship to Elon Musk. Mr. Hinton, who had never engaged in political protests, decided to become active. A few weeks before the incident from which this case arose, he drove into the District and posted flyers on the Mall. He was dissatisfied with the spread of his message by flyer and decided to use Twitter to disseminate his warnings about Trump. Leading up to January 8th, he came up with a plan to publicize the warnings he had put on Twitter.

On January 8, 2025, Mr. Hinton drove into the District to the area around the Capitol building, where he assumed his actions would draw attention. He brought a mixture of Crisco and gasoline in a single-use plastic bottle. Contrary to the misleading statements previously presented by the government, he chose this mixture because he knew that Crisco didn't melt quicky and was thick so it would trap the flames atop his car. (Notably, he did not bring a can of gasoline or any

other accelerant with him). He spraypainted his Twitter handle on his blue Honda Civic and attempted to light a match several times until he was successful. Mr. Hinton reports that he told civilians who were nearby to call the police.

Police came within seconds and when they arrived, an officer shouted "Hey!" Mr. Hinton immediately stepped away from the car, got on his knees, threw the matches and raised his hands. He was arrested without incident. When at the station, he waived his rights and gave a full and truthful statement about his actions and intentions that day. He made clear then that "what I've done is done and I have no interest in doing anything else" like this.

Mr. Hinton, anxious to take responsibility for his actions, pleaded guilty within 18 days of his release from jail and eight days after his indictment.

## I. The Appropriate Guideline Range is 0 to 6 months

The parties agree that Mr. Hinton's guideline range is 0 to 6 months. With acceptance of responsibility and the zero-point offender adjustment, his offense level is 2. His criminal history category is 0.

## II. Under the 3553 Factors, the Appropriate Sentence is six months of probation.

### A. The History and Characteristics of Mr. Hinton

Mr. Hinton is a thirty-six year old man with no criminal record. He graduated high school and has attended some college. He has been in home incarceration and without transportation since the beginning of this case but anticipates being able to work and log community service hours as soon as his car is returned to him, hopefully at the conclusion of his Sentencing Hearing.

Although Mr. Hinton himself is new to political protest, it is important to understand that his actions were purely designed to draw attention to a message and were particularly tailored not to do any harm. His misuse of the word "napalm" drew the government's attention at the inception of the case but, in context, it is clear that he meant to say that the substance he made was designed to contain the flames atop his roof. After describing the mixture that he made (Crisco and gasoline) as "homemade napalm", he specifically said that he was concerned about the fire spreading from the roof of the car to the engine or the gas tank. He did not "search" homemade napalm on the internet and indeed, there is nothing on the internet that attributes napalm-like qualities to Crisco. Instead, he told investigators that he used Crisco because it was thick and would not melt quickly and would thus contain the fire. His goal (acknowledging "as paradoxical as it sounds") was to draw attention while being as "safe as I could to bystanders."

Mr. Hinton's intent is further supported by the fact that he did not bring any gasoline or other accelerant with him, not even a lighter. He brought only matches and water. And even before he struck the match, he told passersby to steer clear and to bring the police. His actions were only designed to draw attention to the messages that he had posted on Twitter. Law enforcement reached the same conclusion, as did the government apparently, given its allocution for a sentence in the community.

Mr. Hinton pleaded guilty almost immediately and has appropriately demonstrated remorse. He has been in perfect compliance since the beginning of

this case.  He intends to return to work and perform community service when his car is returned.

### B. The Nature and Circumstances of the Offense

Mr. Hinton's offense arose from a political protest, in response to the election of Donald Trump.  Mr. Hinton's actions were done in a very visible manner to further his message but also intentionally done where few people were around.  He did not use violence in his actions, and did not carry a firearm, knife or any sort of assaultive weapon.  He did not yell, threaten or assault any people and was entirely cooperative upon arrest.  When interviewed, he waived all of his rights and spoke to two groups of law enforcement agents without counsel.  He answered all of their questions truthfully until they had nothing else to ask.

### C. The Need for the Sentence Imposed

18 U.S.C. § 3553(a) directs the Court to consider four objectives of federal sentencing to impose a sentence that is "sufficient, but not greater than necessary" to achieve those goals.  The first purpose is to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  Mr. Hinton accepted responsibility for his actions and has been compliant on supervision.  He pleaded guilty early, in fact as soon as he possibly could.  His message to the Court demonstrates his remorse and contrition. He has been consistent in his acknowledgment of responsibility since the beginning of this case.

### D. A Time-Served Sentence is Not an Unwarranted Sentencing Disparity and no additional deterrence is necessary.

A six month period of probation is appropriate here. Mr. Hinton committed a property offense as a political protest. Ultimately, there was no damage to any property but his own.

Within the context of deterrence, it is impossible to ignore, as far as general deterrence goes, that nearly 4000 people who were engaged in all forms of political protest ranging from destruction of property to sedition have recently been pardoned. Some of those individuals evaded punishment entirely. It is historically unclear what message the executive and thus the courts are sending to the public regarding general deterrence of crimes committed during political protests. Whatever that message may be, any sentence is likely to create an unwarranted sentencing disparity within the context of the January 6th pardons.

And unlike even the defendants charged with the least serious misdemeanor offenses, very few of them accepted responsibility with the speed that Mr. Hinton did. Mr. Hinton thus saved the government from expending any resources in this prosecution—unlike the January 6th efforts which resulted in enormous costs to taxpayers.

Mr. Hinton falls within a guideline range of 0 to 6 months, which permits a sentence of community supervision as recommended by both parties. The defense requests a sentence of six months, which would permit time for Mr. Hinton to complete a period of community service and would also be consistent with other protest-related destruction of property sentences recently pronounced in this courthouse. *See e.g. United States v. Snow*, 24-cr-578 (JEB) (sentencing Gaza

protestor who burned a government flag to 4 months of probation); *United States v.
Isabella Giordano*¸ 24-cr-441 (JEB) (sentencing Gaza protestor who spray painted
Columbus Circle to six months probation).

## Conclusion

A sentence of six months of probation is appropriate in this case. Mr. Hinton
has no criminal record, sincerely accepted responsibility immediately and has been
perfectly compliant on release.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500